■    THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT GARDELLA, Appellant.—Appeal by defendant from a judgment of the County Court, Westchester County, rendered May 29, 1975, convicting him of murder, robbery in the first degree, grand larceny in the third degree and possession of a weapon, etc., as a felony, upon a jury verdict, and imposing sentence. Judgment affirmed. On June 5, 1974 the body of liquor store owner Bartholomew Ruggiero was found in his automobile. In our opinion the criminal culpability and guilt of defendant Robert Gardella of the crimes of which he has been convicted was established beyond any reasonable doubt. We note particularly the following evidence: (1) Mrs. Rucker (Ruggiero's "common-law" wife) testified that Vincent Bevilacqua, age 19, lived across the street and was a friend of her son. He had access to Ruggiero's unlisted telephone number. She also had known Michael Gardella prior to June, 1974. Ruggiero was in the habit of carrying large amounts of cash—in his brown briefcase. (2) Mrs. Rucker did the clerical work and books for the store. On the afternoon of Sunday, June 2, 1974, she prepared the deposits. There was, in the decedent's brown briefcase, about $6,000 in cash, $4,000 in checks, and coins, jewelry, personal papers and a *Time* magazine. She last saw him alive on June 3, 1974 when he left the apartment at about 8:30 A.M. carrying that briefcase. (3) Prior to June 3, 1974, Kathy Gardella, Robert Gardella's wife, saw a revolver in their marital apartment. (4) During May, 1974 the four defendants (Robert Gardella, Richard Harris, Vincent Bevilacqua and Michael Gardella) met at Robert's apartment, at which meeting Kathy heard Vincent or Michael say that they were going into a man's store, and would ask him for a ride home and take his briefcase. She also heard: "The only way we're going to get that case is to kill him". Although Kathy testified that she had no memory of her husband having been in the room at the time of the "kill him" remark, (a) she did not *deny* that he was there, (b) there was no evidence that he was not there, and (c) her lack of recollection as to his presence was impeached by her Grand Jury testimony. (5) On Monday, June 3, 1974, at about 7:30 P.M., all four men met in Robert Gardella's apartment, and left at about 8:45 or 8:50 P.M. (6) Bartholomew Ruggiero's liquor store was 10 or 15 minutes away from Robert Gardella's apartment. (7) Arnold Ross was in Ruggiero's store from about 8:45 P.M. until 8:57 or 8:58 P.M. on June 3, 1974, during which time two white males, who were about 17 or 18 years old, entered. When Ross left, the youths were still in the store, having a conversation with Ruggiero "as if they knew each other personally." (8) On June 5, 1974 Bartholomew Ruggiero's body was found (by the Greenburgh police) in his car in front of the home of a customer of the Gardella Brother's Fruit and Vegetable Store. Ruggiero had been shot in the back of the head with a .38-caliber bullet. The deputy medical examiner's testimony was consistent with Ruggiero's having been shot at about 9:00 P.M. on June 3, 1974. (9) Kathy Gardella testified that on June 3, 1974, at about 9:30 P.M.,

all four defendants returned to the apartment, at which time either Vincent or Michael was carrying a brown briefcase. She saw them going through the briefcase in the bedroom and saw some papers in it. She also saw money on the bed. She further testified that her husband, Robert, was distributing the money to all four men; Robert, who had jewelry in his hand, was told by Kathy to get it out of the apartment; he then gave the jewelry to defendant Richard Harris. (10) On the early afternoon of June 5, 1974, Robert Gardella's first cousin, Detective Thomas Speconardi of the Town of Mount Pleasant Police Department, was asked by Robert to come to his apartment to pick up a shotgun that Robert wanted to give Speconardi, in the belief that its possession was illegal because the barrel had been cut down. Speconardi went to Robert's apartment that night, at which time he was not aware of the Ruggiero homicide. Speconardi noticed a .38-caliber revolver in Robert's dresser drawer. In answer to questions, Robert said that the gun was hot and that it had been used in a homicide; that he didn't know who the victim was or who had done it; that the homicide had taken place two days before; that the body was near the house of a customer (of the Gardella store); that he wouldn't tell the name of the customer; and that he (Robert) was not implicated. When Robert asked what he should do with the gun, Speconardi told him: "For all I care, cut it up and throw it away." (11) Kathy Gardella testified that on Thursday, June 6, 1974, she saw Robert cutting and destroying a revolver. (12) Speconardi testified that he learned of the Ruggiero murder on June 6, but that when he saw Robert on June 7, 1974 Robert stated that he had cut up the gun and distributed it all over the county. (13) Richard Harris had not been known to Mrs. Rucker. However, after Harris' arrest on June 15, 1974, his car was searched. In it was found a notebook containing the unlisted telephone number of Ruggiero's home. We have examined all of Robert Gardella's other contentions and find them to be without merit. Cohalan, Acting P. J., Margett, Damiani and Mollen, JJ., concur.